# **EXHIBIT A**

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**FEBRUARY 2021**

E-Filing Number: 2102037902

**001972**

| | |
|---|---|
| PLAINTIFF'S NAME<br>SADINA DAVIS | DEFENDANT'S NAME<br>STATE FARM FIRE & CASUALTY CO. |
| PLAINTIFF'S ADDRESS<br>6234 GARDENIA ST<br>PHILADELPHIA PA 19144 | DEFENDANT'S ADDRESS<br>ONE STATE FARM PLAZA<br>BLOOMINGTON IL 61710 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>GARLAND THOMPSON |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>300 MARTIN LUTHER KING BLVD.  SUITE 100<br>WILMINGTON DE 19801 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>FREEDOM MORTGAGE CORP. |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>907 PLEASANT VALLEY AVE. SUITE 3<br>MOUNT LAUREL NJ 08054 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 4 | ☒ Complaint<br>☐ Writ of Summons | ☐ Petition Action<br>☐ Transfer From Other Jurisdictions | ☐ Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☒ $50,000.00 or less<br>☐ More than $50,000.00 | ☒ Arbitration<br>☐ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE

4T - TRUTH IN LENDING

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED
PRO PROTHY**

FEB **22** 2021

**G. IMPERATO**

IS CASE SUBJECT TO
COORDINATION ORDER?
YES        NO

---

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>SADINA DAVIS</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>RACHEL LABUSH | ADDRESS<br>COMMUNITY LEGAL SERVICES<br>1424 CHESTNUT ST.<br>PHILADELPHIA PA 19102 |
|---|---|
| PHONE NUMBER<br>(215)981-3739 | FAX NUMBER<br>(215)981-0436 | |
| SUPREME COURT IDENTIFICATION NO.<br>200285 | E-MAIL ADDRESS<br>rlabush@clsphila.org |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>RACHEL LABUSH | DATE SUBMITTED<br>Monday, February 22, 2021, 04:38 pm |

## COMPLETE LIST OF DEFENDANTS:

1. STATE FARM FIRE & CASUALTY CO.
   ONE STATE FARM PLAZA
   BLOOMINGTON IL 61710
2. GARLAND THOMPSON
   300 MARTIN LUTHER KING BLVD.  SUITE 100
   WILMINGTON DE 19801
3. FREEDOM MORTGAGE CORP.
   907 PLEASANT VALLEY AVE. SUITE 3
   MOUNT LAUREL NJ 08054
4. FINANCE OF AMERICA MORTGAGE LLC
   300 WELSH RD. BUILDING 5
   HORSHAM PA 19044

USTED ESTA ORDENADO COMPARECER EN Arbitration Hearing 1880 JFK Blvd. 5th fl. at 09:15 AM - 12/09/2021
You must still comply with the notice below. USTED TODAVIA DEBE CUJPLIR CON EL AVISO PARA DEFENDERSE.
This matter will be heard by a Board of Arbitrators at the time, date and place specified but, if one or more parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial de novo on appeal from a decision entered by a Judge.

COMMUNITY LEGAL SERVICES

By: Rachel Labush, Esq.
Attorney I.D. No. 200285
rlabush@clsphila.org
(215) 981-3739
1424 Chestnut Street
Philadelphia, PA 19102

Filed and Attested by the
Office of Judicial Records
22 FEB 2021 04:38 pm
G. IMPERATO

| | |
|---|---|
| SADINA DAVIS<br>6234 Gardenia St.<br>Philadelphia, PA 19144, | COURT OF COMMON PLEAS |
| | PHILADELPHIA COUNTY |
| Plaintiff | CIVIL DIVISION |
| v. | FEBRUARY TERM, 2021 |
| STATE FARM FIRE & CASUALTY CO.<br>One State Farm Plaza<br>Bloomington, IL 61710 | NO. |
| GARLAND THOMPSON<br>300 Martin Luther King Blvd., Suite 100<br>Wilmington, DE 19801 | |
| FREEDOM MORTGAGE CORP.<br>907 Pleasant Valley Ave., Suite 3<br>Mt. Laurel, NJ 08054 | |
| FINANCE OF AMERICA MORTGAGE LLC<br>300 Welsh Rd., Building 5<br>Horsham, PA 19044 | |

## COMPLAINT – CIVIL ACTION

### NOTICE TO DEFEND

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the Plaintiffs. You may lose money or property or other rights important to you.

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.*

*LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.*

**Philadelphia Bar Association**
**Lawyer Referral and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

**Asociacion De Licenciados De Filadelfia**
**Servicio De Referencia E Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333, TTY (215) 451-6197**

## COMPLAINT – CIVIL ACTION

Plaintiff Sadina Davis, through her undersigned counsel, hereby avers as follows:

### I.      INTRODUCTION

1.      Plaintiff Sadina Davis ("Plaintiff" or "Ms. Davis") brings this action against her homeowners insurance company and its agent for falsely promising to insure her first home for a rate which it never intended to honor, then billing her for an inflated rate she never agreed to, and against her mortgage servicer for paying the unjustified insurance charges, mishandling her escrow account, overbilling her, misapplying her mortgage payments, falsely reporting her as delinquent to the credit bureaus, and refusing to correct her account despite her repeated requests.

2.      Ms. Davis brings claims against defendants Garland Thompson and State Farm Fire and Casualty Co. for fraudulent misrepresentation, negligent misrepresentation, and violations of Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §§ 2270.1 *et seq.,* and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq.*; against defendant Freedom for violations of the FCEUA, UTPCPL, and the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* and Fair Credit

Case ID: 210201972

Reporting Act ("FCRA"), 15 U.S.C. 1681 §§ *et seq.*; and against Defendant Finance of America LLC for violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1638 *et seq.*

3.      Ms. Davis seeks economic, emotional, statutory and punitive damages resulting from Defendants' misrepresentations regarding her insurance and mortgage accounts, the unjustified amounts they charged her, and their repeated failures to correct her accounts.

## II.      PARTIES

4.      Plaintiff Sadina Davis ("Ms. Davis") is an individual residing at 6234 Gardenia Street, Philadelphia PA 19144 ("the Property").

5.      Defendant State Farm Fire & Casualty Company ("State Farm") is an insurance company incorporated in Illinois with a principal place of business at One State Farm Plaza, Bloomington, IL 61710.

6.      Defendant Garland Thompson is an insurance agent for State Farm with a business address bearing his name located at 300 Martin Luther King Blvd., Suite 100, Wilmington, DE 19801. Upon information and belief, Mr. Thompson is a resident of Delaware County, Pennsylvania.

7.      Defendant Freedom Mortgage Corp. ("Freedom") is a mortgage company incorporated in New Jersey with a principal place of business at 907 Pleasant Valley Ave., Suite 3, Mount Laurel, NJ 08054.

8.      Defendant Finance of America Mortgage LLC ("Finance of America") is a mortgage company with a principal place of business at 300 Welsh Rd., Building 5, Horsham, PA 19044.

## III.      VENUE

9.      This action consists of causes of action which arose in Philadelphia County, concerning the purchase of Plaintiff's real property in Philadelphia County, a homeowners insurance policy on that property, and the servicing of a mortgage on that property.

## IV.    FACTUAL ALLEGATIONS

10.     On February 3, 2019, Ms. Davis, a first time homebuyer, entered into a contract to buy the Property with a mortgage loan from Finance of America Mortgage, LLC ("Finance of America") insured by the Federal Housing Administration ("FHA").

11.     Finance of America and the FHA required that Ms. Davis obtain homeowner's insurance to be paid at closing of the home purchase, which was scheduled for March 1, 2019.

12.     At the recommendation of Ms. Davis's realtor, she obtained a quote from State Farm agent Garland Thompson.

13.     Mr. Thompson asked Ms. Davis if she had a car, and she said told him she did not.

14.     On or about February 28, 2019, Mr. Garland provided Ms. Davis's realtor and Finance of America with a Declarations Page and Premium Notice, promising to insure the property up to $273,000 from February 28, 2019 until February 28, 2020 in return for payment of a $935.00 premium.  A copy of the Declarations Page and Premium Notice is attached as Exhibit A.

15.     On March 1, 2019 Ms. Davis bought the Property with a purchase money mortgage loan for $142,274.00 from Finance of America, insured by the FHA ("the Mortgage").

16.     Lancaster Abstract and Escrow Services, LLC, the title company handling the closing of Ms. Davis's purchase of the Property, paid the $935.00 premium to State Farm out of her funds at the closing on March 1, 2019.

17.    On April 1, 2019 defendant Freedom sent a "Welcome Letter" to Ms. Davis informing her that servicing of her loan would transfer to it effective May 1, 2019.  Upon information and belief, Freedom has serviced the Loan on behalf of lender Finance of America since at least May 1, 2019.

18.    Ms. Davis's initial monthly mortgage payment was $1,053.67, consisting of $731.49 in principal and interest and an escrow payment of $322.18 to cover taxes and insurance.

19.    Ms. Davis made timely payments of $1,053.67 to Freedom every month from May through November 2019.

<u>State Farm's Unjustified Collection of Additional Premiums</u>

20.    Meanwhile, shortly after Ms. Davis purchased the Property, she began receiving notices from State Farm threatening cancellation of her homeowners' insurance policy, which she did not understand since the entire first year of coverage had been paid for at closing.

21.    Ms. Davis called Mr. Thompson several times to ask why she was receiving the threats of cancellation from State Farm.  He said to disregard the notices, and told her that he "would take care of it."

22.    When the situation seemed unresolved after several weeks, Ms. Davis lost confidence in Mr. Thompson's assurances.  In June 2019 she asked that her policy be transferred to another State Farm agent, Lori Henry, whom she had dealt with in the past.

23.    Mr. Thompson assured Ms. Davis that her policy and premium would not change in the switch from his office to Ms. Henry's, and again reassured her that her policy was paid until March 2020.

24.    Ms. Henry also told Ms. Davis not to worry, and that State Farm would not send her any more letters.

25.     In fact, unbeknownst to Ms. Davis, on or around May 3, 2019, State Farm had sent Freedom another copy of her homeowners insurance with a premium of $1,451.  After crediting her the $935 paid at closing, State Farm claimed that the balance of $516 was still due.

26.     Also unbeknownst to Ms. Davis, State Farm sent Freedom a notice on or around August 2, 2019 claiming that Ms. Davis's policy would be canceled if it was not paid $1,288 by the end of the month.

27.     Freedom paid State Farm the $1,288 on August 5, 2019.

28.     Freedom had never contacted Ms. Davis before making payment to State Farm, despite the unusual circumstance of receiving bills shortly after the policy had been paid for the year, and months before the policy was supposed to renew.

29.     At the time Freedom paid State Farm, Ms. Davis was completely unaware that State Farm had sought additional payment from Freedom.

30.     After Ms. Davis became aware that Freedom had paid State Farm additional premium amounts, she repeatedly called her State Farm agent Lori Henry, but Ms. Henry would not take her calls or answer any questions about why State Farm had charged additional amounts for the policy.

31.     Ms. Davis finally spoke with Ms. Henry's associate Dawn, who had State Farm underwriter John Pellegrini call Ms. Davis.  Mr. Pellegrini told Ms. Davis that State Farm had sent her letters with the premium increase, but she told him she had never received them.

32.     Mr. Pellegrini then sent Ms. Davis a letter on January 28, 2020 claiming that the additional $1,288 State Farm collected from Freedom in August was for "the removal of the utility rating plan discount ($525.00) and removal of the home/auto discount ($772.00)."  Mr. Pellegrini

also stated that "the annual premium at issuance was $1,451 due to the removal of the utility rating plan discount."

33.    Ms. Davis did not and does not know what a utility rating plan discount is.

34.    Ms. Davis did not have a car, or immediate plans to obtain a car, at the time she bought the Property, a fact that was well known to Mr. Thompson.

35.    Mr. Pellegrini also enclosed bills and notices with his January 28, 2020 letter which he claimed State Farm had sent to Ms. Davis.

36.    Ms. Davis had never received any of the enclosed notices previously and was shocked to see them, since she had paid for a year of insurance coverage from State Farm, through March 1, 2020, at the closing of her home purchase on March 1, 2019.

### Freedom's Mishandling of Ms. Davis's Mortgage Account

37.    Meanwhile, in November 2019, Ms. Davis received an "Escrow Account Disclosure Statement" from Freedom dated October 30, 2019, which stated that her escrow account had a shortage of $2,122.91. The statement claimed that Freedom had paid $1,288.00 in "Homeowners" in August 2019.  At the time Ms. Davis received the notice, she was unaware that State Farm had billed Freedom for additional amounts, or that Freedom had paid. A copy of the Statement is attached as Exhibit B.

38.    As a result of the alleged escrow shortage, Freedom increased Ms. Davis's monthly payment for December 1, 2019 to $1,336.43.  This was an increase of almost $300 from her prior monthly payment.

39.    In November 2019 Ms. Davis called Freedom to dispute the escrow advance and payment increase, because Freedom had not explained why it paid for insurance in August 2019 when her policy had been paid through March 1, 2020.

40.     The Freedom representative Ms. Davis spoke with told her that State Farm had sent a bill that Freedom had paid, which is why her mortgage payment had gone up.  The Freedom representative insisted that she had to pay the $2,122.91 shortage, find new insurance, "or we can take your house."

41.     The Freedom representative told Ms. Davis that she had to pay the full amount Freedom considered due, over $1,400, or her payment would not be applied to her account.  The representative then said Freedom was going to do another escrow reanalysis and it could not accept her payment of $1,053.67, because it would be considered a partial payment.  The representative told Ms. Davis that the escrow reanalysis takes three to five business days, and that a representative would call her back with the updated amount. Relying on the representative's statements, Ms. Davis delayed making her December 2019 payment.

42.     Relying on the Freedom representative's statements and fearing the loss of her home if she did not obtain new insurance, Ms. Davis searched for and obtained coverage from Nationwide, effective November 20, 2019 through November 20, 2020.

43.     On or about November 20, 2019, Ms. Davis, a representative from Nationwide, and Dawn from State Farm all were on a conference call together. Ms. Davis verbally told Dawn that she was switching insurance coverage.  Dawn said that State Farm needed a copy of the declarations page of the new Nationwide policy and the Nationwide representative said he would fax it over to her.

44.     On the November 20, 2019 phone call, Dawn told Ms. Davis that State Farm would issue a refund of $1,288 directly to Freedom.

45.     At Ms. Davis's direction, the Nationwide representative provided Freedom with a copy of the Nationwide policy and Freedom paid the $1,632.72 premium on November 21, 2019.

Case ID: 210201972

46.    Upon information and belief, State Farm canceled its policy for Ms. Davis effective December 30, 2019, and on January 6, 2020 it issued her a refund check of $542.41.

47.    Upon information and belief, State Farm did not refund any funds it had received for Ms. Davis's policy directly to Freedom.  Ms. Davis turned over the $542.41 refund to Freedom herself.

48.    Meanwhile, on December 6, 2019, Freedom sent Ms. Davis another "Escrow Account Disclosure Statement" stating that the amount of her escrow shortage was $2,009.86 and her new monthly payment effective December 1, 2019 was $1,277.82. A copy is attached as Exhibit C.

49.    On December 17, Freedom sent Ms. Davis a letter stating that her account was past due for the December 1, 2019 payment of $1,277.82 and as a consequence, she had been charged a late fee of $29.25.

50.    On January 1, 2020 Freedom sent Ms. Davis a letter stating that "Your mortgage is now 2 payments past due": $1,277.82 for December 1, 2019 and $1,277.82 for January 1, 2020, for a total of $2,555.64.

51.    On January 7, 2020 Freedom sent Ms. Davis a third "Escrow Account Disclosure Statement" stating that the amount of her escrow shortage was $1,904.64, and her new monthly payment effective December 1, 2019 was $1,196.59. A copy is attached as Exhibit D.

52.    On January 20, 2020 Ms. Davis paid Freedom $542.41, which it applied to her escrow account.  This was the amount of the premium refund which State Farm had sent to her at the time she canceled the policy.

53.    On January 21, 2020 Ms. Davis paid Freedom $1,196.59, which was the amount listed on both the January 7, 2020 "Escrow Account Disclosure Statement" and on her January 20,

Case ID: 210201972

2020 mortgage statement from Freedom as the monthly payment amount due for her December, 2019 payment.

54.     Freedom sent Ms. Davis two letters dated February 3, 2020.  One of them said her loan was two payments past due and that the "total amount due" was $2,377.23.  The other said that her loan was one payment overdue and the "total amount due to bring your account current" was $2,397.23.

55.     On or about February 14, 2020 Ms. Davis called Freedom to catch up on her payments.  She spoke with a supervisor who agreed that Freedom would accept payment of $2,107.34 from her to cover the January and February 2020 payments, and bring her current on the loan.

56.     Instead, according to Freedom's mortgage statement dated February 14, 2020, it applied $1,151.39 of Ms. Davis's $2,107.34 to the January 2020 payment and put $955.95 in the suspense account.

57.     Freedom sent Ms. Davis a letter dated February 17, 2020 stating that her payment of $1,173.99 due February 1, 2020 had not been paid and she had been charged a late fee of $29.25.

58.     Freedom called Ms. Davis in late February and told her that her account was still due for the February payment, despite her having paid it over the phone on February 14.  Believing that Freedom had misapplied her $2,107.34 payment, Ms. Davis put a stop payment on it with her bank.

59.     On March 6, 2020 Ms. Davis mailed three certified checks, each for $1,053.67 (total of $3,161.01) to Freedom via certified mail, to cover her January, February and March 2020 mortgage payments.  The checks were made out in Ms. Davis's original payment amount from

Case ID: 210201972

before Freedom changed her escrow payment due to its unauthorized payment of State Farm's unjustified bill.

60.    According to tracking information from the United States Postal Service website, all three checks were received by Freedom on March 11, 2020.

61.    However, according to Freedom's mortgage statement dated March 18, 2020, it only credited her with having made one payment on March 13 and one on March 18, and did not record the third payment.

62.    Freedom's mortgage statement dated March 18, 2020 still showed Ms. Davis as two months behind.

63.    From March 2020 on, Freedom treated Ms. Davis as at least two months delinquent even though she continued to make a mortgage payment to Freedom every month.

64.    To the extent that Freedom may have considered Ms. Davis's payments for January, February and March 2020 to be short, such shortage was solely the result of State Farm billing Freedom for an unjustified premium increase and Freedom paying the bill without justification or permission.

65.    Even accounting for the difference in payment amounts triggered by Freedom's unjustified escrow reanalyses, Ms. Davis should have been at most a partial payment behind, not the two to three months that Freedom insisted she was.

66.     Freedom sent Ms. Davis letters dated March 18 and March 26, 2020 stating that her loan was overdue for the February and March payments and that the total amount due to bring her account current was $2,475.73.

67.     In early March 2020, Freedom sent Ms. Davis an "Act 91 Notice" claiming that she had missed monthly payments due "January 01, 2020 – March 01, 2020" and that she had to pay a total past due amount of $3,577.87 in order to avoid foreclosure.

68.     In early April 2020 Freedom sent Ms. Davis an "Act 91 Notice" claiming that she had missed monthly payments due "February 1, 2020 – April 1, 2020" and that she had to pay $2,693.77 to avoid foreclosure.

69.     Ms. Davis reasonably feared the loss of her home but did not agree that she was behind, nor could she afford to pay $2,693.77 all at once.

70.     On April 11, 2020 Ms. Davis sent Freedom a certified check for $1,176.00 via certified mail. USPS tracking information shows that it was received by Freedom on April 14.

71.     Upon information and belief, Freedom applied the $1,176.00 certified check it received on April 14 to the February payment.

72.     Ms. Davis's next monthly mortgage statement, dated May 18, 2020, claimed overdue payments of $2,347.98.

73.     On May 22, 2020 Ms. Davis sent money orders totaling $1,180 to Freedom via certified mail.

74.     On May 28, 2020 Freedom sent Ms. Davis an "Escrow Account Disclosure Statement" claiming that she now had a $477.40 surplus in her escrow account which would be returned to her, and that her monthly mortgage payment beginning May 1, 2020 would be $1,115.64.

75.     Ms. Davis received a $477.40 check from Freedom in June 2020, but did not accept it because she did not understand why Freedom would send her money back while simultaneously considering her behind in the mortgage.

76.     Ms. Davis called Freedom to question why they sent her the check. She said that money did not belong to her and was intended for her mortgage, and that she would not deposit it. The Freedom representative admitted that it was strange that the escrow account was overpaid while the mortgage payments were behind.

77.     Upon information and belief, because Ms. Davis would not accept the escrow refund check, Freedom canceled it on or around June 25, 2020 and returned the money to her account.

78.     On June 20, 2020, Ms. Davis sent a bank check for $1,120 to Freedom via certified mail.

79.     On July 20, 2020, Ms. Davis sent a bank check for $1,150 to Freedom via certified mail.

80.     On August 14, 2020, Ms. Davis sent a bank check for $1,180 to Freedom via certified mail.

81.     Despite Ms. Davis having made payments in excess of the regular monthly payment every month from May through August 2020, Freedom claimed on its September 18, 2020 statement that she was over two months behind on her mortgage payments and that the total amount due was $3,650.17.

82.     On September 15, 2020, Ms. Davis sent a bank check for $1,150 to Freedom via certified mail.

83.     On October 15, 2020, Ms. Davis called Freedom and authorized a payment over the phone for $1,144.89. After applying the payment, Freedom's statement said the total amount due was $2,534.53.

84.    On November 15, 2020, Ms. Davis made a payment of $1,115.64 through Freedom's website. Finally, Freedom's November 16, 2020 mortgage statement showed no past due payments, though Freedom did claim fees and late charges on it totaling $303.25.

85.    Throughout 2020, Freedom had sent Ms. Davis numerous letters telling her she was delinquent, threatened foreclosure, called her many times including at work, and even sent someone to her house multiple times to take pictures and drop off documents, even though she continued to make a payment to Freedom every month.

86.    Ms. Davis was extremely upset and embarrassed about Freedom's harassment of her for payments that she had already made to them.

87.    As a result of the dispute over the escrow account and Freedom's misapplication of Ms. Davis's payments, it charged her $292.25 in late fees, $29.25 of which she had paid, and $40.00 in other fees and charges associated with her alleged delinquency.

88.    In the year-end tax statement Freedom provided to Ms. Davis for 2020 (IRS Form 1098), Freedom indicated that she had paid $5,707.89 in escrow (an average of $475.66 per month) and it had paid out only $3,316.97 in hazard insurance and FHA insurance.

89.    Despite collecting escrow payments from Ms. Davis for property taxes, Freedom did not pay any taxes for the Property in 2020.  Property tax payments are due in Philadelphia on March 31 of each year.

90.    Freedom's 1098 form for Ms. Davis also indicated that she paid $9,509.37 in principal and interest in 2020, which is equal to thirteen full monthly payments.

<u>Ms. Davis's Efforts to Correct Her Mortgage Account</u>

91.    Ms. Davis made many phone calls to Freedom over the course of 2020, disputing the delinquent status of her account, but every time the Freedom representatives insisted that she

was delinquent, had not made a payment for the last month or two, and needed to pay a significant lump sum to catch up on her mortgage.

92.    In February 2020 Ms. Davis made a complaint to the Pennsylvania Department of Banking and Securities about Freedom's mishandling of her escrow account and payments.

93.    In response, Roseanne Goldberg Hoch, Senior Vice President of Customer Service at Freedom, wrote a letter dated March 19, 2020 simply reciting the timeline of its correspondence and payment to State Farm and Nationwide. Curiously, Ms. Goldberg claimed in her letter that Ms. Davis had not forwarded Freedom the refund of $542.41 that State Farm sent her, although she had in fact paid it to Freedom on January 20, 2020.

94.    On July 21, 2020, Ms. Davis, through counsel, sent Freedom a Request for Information and Notice of Error pursuant to 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and 1024.36 ("the RESPA Letter"). A copy of the RESPA letter is attached hereto as Exhibit E.

95.    The RESPA Letter requested:

a.    A complete payment history listing the dates and amounts of all the payments Ms. Davis had made on the loan to date, and showing how each payment was applied or credited (whether to principal, interest, escrow, suspense, or some other treatment);

b.    A copy of all monthly statements Freedom had sent to Ms. Davis;

c.    A breakdown of the amount of claimed arrears or delinquencies on Ms. Davis's account, including an itemization of all fees and charges that Freedom claimed were currently due;

d.    A breakdown of all changes or adjustments in homeowners insurance for the life of the mortgage including copies of any and all documentation of initiation,

cancellation, adjustment or resumption of any and all policies applying to her

account;

e.   A breakdown of the current escrow charge showing how it was calculated and the

reasons for any increase within the last 24 months; and

f.   A copy of any escrow statements, analyses, and notices of a shortage, deficiency,

or surplus, sent to Ms. Davis.

96.   The RESPA Letter also claimed that Freedom had made errors in servicing Ms.

Davis's account:

a.   Freedom charged Ms. Davis the $1,288 without justification because it should

not have paid another premium shortly after closing at which an entire year of

insurance coverage had been paid for; and

b.   Freedom had failed to accept and credit Ms. Davis's payments properly since

January 2020.

97.   Freedom never sent a response to the RESPA letter.

98.   Freedom signed the certified mail postcard for the RESPA letter on August 14,

2020, but never sent a response to it.

99.   On October 8, 2020, counsel for Ms. Davis called Freedom and spoke with a

representative named Dante.  He could not find a record of Freedom receiving the RESPA letter.

Counsel then verbally requested a complete account history and a copy of all escrow notices and

analyses.  Dante said he would try to get them emailed.

100.   On October 13, 2020, counsel for Ms. Davis received an email from Freedom

enclosing a) a payment history; b) a copy of the release to Community Legal Services signed by

Case ID: 210201972

Ms. Davis; c) the Escrow Account Disclosure Statement dated May 28, 2020; d) the 2019 1098

tax form; and e) a Customer Account Activity Statement for 2019.

101.    No other response to the RESPA letter has been received by Freedom to date.

<u>Freedom's Pattern and Practice of RESPA Violations</u>

102.    Upon information and belief, Freedom's insufficient written response to Ms.

Davis's RESPA letter was part of an ongoing and deliberate practice of noncompliance by

Freedom, which has mistreated many mortgage loan borrowers and violated provisions of RESPA

and the regulations promulgated thereunder.

103.    At the time of the filing of this complaint, over 3,340 consumer complaints have

been lodged against Freedom Mortgage with the Consumer Financial Protection Bureau.[1]

104.    Approximately 1,193 of the complaints against Freedom Mortgage specifically

concern "Trouble during payment process." Many of these include a narrative of the complaint,

quite a few of which detail Freedom Mortgage's mishandling of escrow accounts and refusal to

correct its errors.

105.    Approximately 669 of the complaints against Freedom specifically concern "Loan

servicing, payments, escrow account" issues related to mortgages. Many of these include a

narrative of the complaint, and many of the narratives describe alleged errors related to escrow

accounts, as detailed in this action. Significantly, the narratives also document Freedom's refusal

to provide information, respond to borrower disputes, or correct the servicing errors identified by

customers.

---

[1]        Each such complaint is filed and catalogued in the CFPB's publicly accessible online database, which is
available at: https://www.consumerfinance.gov/data-research/consumer-complaints/.

106.    Freedom's repeated conduct in violation of federal law, spanning time and occurring across the country, establishes a pattern and practice of noncompliance with the requirements of RESPA.

Defendants' Actions Have Damaged Ms. Davis's Credit

107.    The credit reporting agencies, Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union") and Defendant Freedom have also been reporting derogatory and inaccurate statements and information relating to Ms. Davis and her credit history to third parties from at least October 2019 through the present. The inaccurate information pertains to the same mortgage loan at issue.

108.    Specifically, Freedom has inaccurately reported the mortgage loan account with a history of missed and late payments and a past due balance on Ms. Davis's Trans Union, Equifax and Experian credit reports. Freedom furnished this inaccurate information to the credit reporting agencies from at least October 2019 on.

109.    The inaccurate information negatively reflects upon Ms. Davis, her credit repayment history, her financial responsibility as a debtor, and her creditworthiness.

110.    Freedom has been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that it has disseminated to various persons and credit grantors, both known and unknown.

111.    As a result of the inaccurate and derogatory information provided by Freedom to the credit bureaus, Ms. Davis's credit score was significantly lowered, and other creditors canceled her credit cards and closed out her lines of credit.

112.    In or around June 2020, Ms. Davis disputed the inaccurate information to Equifax, Experian, and Trans Union by following their established procedures for disputing consumer credit information.

113.    The credit reporting agencies sent Ms. Davis correspondence indicating their intent to continue publishing the inaccurate information as verified by Freedom. The credit reporting agencies have continued publishing and disseminating consumer reports to third parties, persons, entities, and credit grantors from at least October 2019 through the present.

114.    Notwithstanding Ms. Davis's disputes, Freedom has failed to conduct timely and reasonable investigations of her disputes after being contacted by the credit reporting agencies concerning her disputes, has willfully continued to report the inaccurate information to the credit reporting agencies, and has failed to mark the account at issue as disputed.

115.    Despite Ms. Davis's efforts to date, Freedom has deliberately, willfully, intentionally, recklessly and negligently failed to perform reasonable reinvestigations of her disputes as required by the Fair Credit Reporting Act, has failed to remove the inaccurate information, has failed to report on the results of their reinvestigations to all credit reporting agencies, has failed to note the disputed status of the inaccurate information, and has continued to report the derogatory inaccurate information about her.

Damages Suffered by Ms. Davis as a Result of Defendants' Conduct

116.    As a result of Defendants' conduct, Ms. Davis has suffered actual damages in the form of fees and charges that she paid, lost credit opportunities, harm to credit reputation and credit score, and emotional distress, including anxiety, humiliation and embarrassment.

117.    Defendants' actions have caused mortgage arrearages to occur on Ms. Davis's account, damaged her credit which resulted in the loss of credit opportunities, caused imminent loss of her family home, and assessed needless fees to her account.

118.    Ms. Davis has been damaged by State Farm's imposition of unjustified charges on her account, its collection of those charges from Freedom, which were passed through to her, and State Farm's refusal to refund her the full amount of its unearned charges.

119.    Ms. Davis has been damaged by Freedom's imposition of unjustified fees and charges on her account, including escrow charges, delinquency fees and late fees which should not have been charged to her.  Upon information and belief, Freedom has applied some of her payments to these unjustified fees and charges.

120.    In addition, Freedom has repeatedly failed to credit Ms. Davis's account properly and promptly with complete periodic payments she has made, causing the unjustified imposition of late fees and other fees which would not have been charged to her if Freedom had applied the payments properly.

121.    As a result of Defendants' unjustified charges and misapplication of payments, Ms. Davis was forced to pay thousands of additional dollars in mortgage payments and insurance premiums, as well as the cost of certified checks and certified mail.

122.    Ms. Davis suffered shock, fear, and disbelief upon learning that State Farm had doubled her premium after the annual policy had been fully paid for, and that Freedom had paid the increase without consulting her or obtaining her permission.

123.    Freedom's threats to foreclose on Ms. Davis's home even as she continued to make regular monthly mortgage payments caused her additional anxiety, fear and mental anguish.

Freedom's actions also caused Ms. Davis to suffer crying spells, headaches, high blood pressure, difficulty sleeping, and reduced appetite.

124.    Ms. Davis hoped that Freedom's mishandling of her escrow account and payments were errors that it would correct in response to her complaints and RESPA letter from her counsel.

125.    When Freedom failed to send any response to Ms. Davis's RESPA letter, or to correct any of its errors, she despaired of ever resolving the dispute. As a result, she has suffered additional anxiety, depression, and emotional distress.

126.    Freedom's continued inaccurate reporting of Ms. Davis's loan status to the credit bureaus has resulted in damage to Ms. Davis's credit, the involuntary closure of credit cards, and the loss of other credit opportunities.

## COUNT I: FRAUDULENT MISREPRESENTATION AGAINST DEFENDANTS STATE FARM AND GARLAND THOMPSON

127.    Plaintiff incorporates the previous allegations by reference.

128.    Upon information and belief, at all times relevant hereto Mr. Thompson was acting as an agent of State Farm with the authority to bind State Farm to coverage.

129.    Mr. Thompson knew that Ms. Davis did not own an automobile and had no need for auto insurance, yet he falsely represented to Ms. Davis both orally and in writing that she was entitled to homeowners coverage at a rate which he knew incorporated a discount that depended on insuring an automobile through State Farm.

130.    Mr. Thompson, acting as State Farm's agent, presented Ms. Davis a policy with the rate he knew she did not qualify for with the intent to deceive her into choosing and purchasing the coverage.

131.    Ms. Davis reasonably relied on Mr. Thompson's expertise in insurance and status as a State Farm agent, and reasonably relied on his false representations that she could obtain

Case ID: 210201972

homeowners insurance from State Farm for $935 per year in choosing to insure her home through State Farm.

132.    At the time Mr. Thompson and State Farm sent the Declarations Page and Premium Notice to Ms. Davis's realtor, mortgage underwriter and title agent, Defendants knew that the rate depended on discounts that Ms. Davis did not request or qualify for.

133.    Ms. Davis reasonably relied on Mr. Thompson and State Farm's false representations that she would receive an entire year of homeowners' insurance in an amount sufficient to satisfy the requirements of her mortgage for payment of $935, and caused the $935 to be paid to State Farm through the closing of her purchase of the Property.

134.    Ms. Davis was harmed by her reliance on Mr. Thompson and State Farm's misrepresentations about the cost of her coverage because State Farm caused Freedom to pay additional amounts for coverage she reasonably believed had already been fully paid, and Freedom in turn billed those amounts to her.

135.    Ms. Davis was harmed by her reliance on Mr. Thompson and State Farm's misrepresentations because her monthly mortgage payment was substantially increased due to State Farm's collection of additional premium amounts from Freedom.

136.    Ms. Davis further relied on Mr. Garland's repeated misrepresentations after her purchase of the policy that she did not have to worry about anything, that her rate could not change during the first year, and that he was taking care of any problems that might have occurred with State Farm's billing.

137.    As a result of Ms. Davis's reliance on Mr. Garland's and State Farm's misrepresentations, she has suffered damages including but not limited to shock, stress, anxiety,

emotional distress associated with her mortgage being delinquent and fear of losing her home, and the collection of additional premiums from her.

138.    Mr. Thompson's and State Farm's conduct in misrepresenting the cost of Ms. Davis's insurance and the status of her coverage was outrageous and performed with reckless indifference to Ms. Davis's legal rights to accurate information about her insurance and its cost.

139.    Because Mr. Thompson's and State Farm's fraudulent misrepresentations as outlined above were so reckless and outrageous, Ms. Davis is entitled to actual and punitive damages.

## COUNT II: NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS STATE FARM AND GARLAND THOMPSON

140.    Plaintiff incorporates the previous allegations by reference.

141.    As a licensed insurance agent, Mr. Thompson was required to exercise the skill and knowledge normally possessed by insurance agents, and owed Ms. Davis a duty of care to process her application for homeowners insurance accurately and to convey accurate policy information to her.

142.    As Ms. Davis's insurance provider, State Farm owed her a duty of care to process her application for homeowners insurance accurately and to convey accurate policy information to her.

143.    Even though Mr. Thompson knew that Ms. Davis did not own an automobile and had no need for auto insurance, he falsely represented to her both orally and in writing that she was entitled to homeowners coverage at a rate which he knew she did not qualify for.

144.    Mr. Thompson, acting as State Farm's agent, presented Ms. Davis a policy with the rate he knew or should have known she did not qualify for with the intent to deceive her into choosing and purchasing the coverage.

145.    Ms. Davis reasonably relied on Mr. Thompson's expertise in insurance and status as a State Farm agent, and reasonably relied on his false representations that she could obtain homeowners insurance from State Farm for $935 per year in choosing to insure her home through State Farm.

146.    At the time Mr. Thompson and State Farm sent the Declarations Page and Premium Notice to Ms. Davis's realtor, mortgage underwriter and title agent, Defendants knew or should have known that the rate depended on bundling of insurance that Ms. Davis did not qualify for.

147.    Ms. Davis reasonably relied on Mr. Thompson and State Farm's false representations that she would receive an entire year of homeowners' insurance in an amount sufficient to satisfy the requirements of her mortgage through payment of $935, and caused the $935 to be paid to State Farm through the closing of her purchase of the Property.

148.    Ms. Davis was harmed by her reliance on Mr. Thompson and State Farm's misrepresentations about the cost of her coverage because State Farm caused Freedom to pay additional amounts for coverage she reasonably believed had already been fully paid, and Freedom in turn billed those amounts to her.

149.    Ms. Davis was harmed by her reliance on Mr. Thompson and State Farm's misrepresentations because her monthly mortgage payment was substantially increased due to State Farm's collection of additional premium amounts from Freedom.

150.    Ms. Davis further relied on Mr. Garland's repeated misrepresentations after her purchase of the policy that she did not have to worry about anything, that her rate could not change

during the first year, and that he was taking care of any problems that might have occurred with State Farm's billing.

151.    As a result of Ms. Davis's reliance on Mr. Garland's and State Farm's misrepresentations, she has suffered damages including but not limited to shock, stress, anxiety, emotional distress associated with her mortgage being delinquent and fear of losing her home, and the collection of additional premiums from her.

152.    Mr. Thompson's and State Farm's conduct in misrepresenting the cost of Ms. Davis's insurance and the status of her coverage was outrageous and performed with reckless indifference to Ms. Davis's legal rights to accurate information about her insurance and its cost.

153.    Because Mr. Thompson's and State Farm's misrepresentations were so reckless and outrageous, Ms. Davis is entitled to actual and punitive damages.

## COUNT III: VIOLATION OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT ("FCEUA") AND  UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL") AGAINST DEFENDANTS STATE FARM AND GARLAND THOMPSON

154.    Plaintiff incorporates the previous allegations by reference.

155.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq.*, prohibits any "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" in the conduct of trade or commerce. 73 P.S. §§ 201-3, 202-2(4)(xxi).

156.    Insurance transactions are a form of "trade" or "commerce" covered by the UTPCPL.

Case ID: 210201972

157. Mr. Thompson and State Farm engaged in fraudulent or deceptive conduct by offering to insure Ms. Davis's home for a rate that she could only qualify for by getting automobile insurance with State Farm, when defendants knew she did not have an automobile.

158. Mr. Thompson and State Farm engaged in fraudulent or deceptive conduct by failing to inform Ms. Davis that the $935 rate which it offered to her, and for which it accepted payment, depended on having an automobile.

159. Mr. Thompson also engaged in fraudulent or deceptive conduct by repeatedly telling Ms. Davis not to worry about the status of her insurance account when she received threats of cancellation shortly after the policy was paid for.

160. If Ms. Davis had known that the rate depended on her getting auto insurance with State Farm, and that State Farm would in fact charge her double that rate, she would not have agreed to and paid for the policy.

161. Ms. Davis reasonably relied on Defendants' representations that they would insure her home for $935 for the entire year when she selected the insurance and paid for it at the closing of her home purchase.

162. Ms. Davis also reasonably relied on Mr. Thompson's assurances that nothing was wrong with the State Farm policy and he would take care of any misunderstandings about whether it was paid, missing any chance she may have had to dispute the premium increase before Freedom paid it.

163. Defendant State Farm also engaged in unfair or deceptive debt collection activity and practices in violation of Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. §§ 2270.1, et seq.

164. State Farm is a creditor as defined by the FCUEA, 73 P.S. § 2270.3.

165.    State Farm has engaged in unfair or deceptive debt collection activity and practices in violation of the FCEUA, including but not limited to:

    a.    Using false, deceptive, and misleading representations or means in connection with the collection of a debt. 73 P.S. § 2270.4(b)(5); and

    b.    Demanding fees or charges not expressly authorized by the agreement creating the debt or permitted by law. 73 P.S. § 2270.4(b)(6).

166.    Any violation of the FCEUA is a per se violation of the UTPCPL. 73 P.S. § 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of . . . the Unfair Trade Practices and Consumer Protection Law.").

167.    Ms. Davis has suffered an "ascertainable loss of property" within the meaning of 73 P.S. § 201-9.2(a), in that she was forced to repay Freedom for the $1,288 that it paid to State Farm on her behalf, and was charged fees and charges by Freedom related to the escrow increase caused by State Farm's collection of the additional premium from Freedom, as well as costs for paper, toner, and certified mail to attempt to fix the problems with her insurance and mortgage accounts.

168.    The circumstances are so egregious, the conduct of Mr. Thompson and State Farm was so reckless and wrongful, and the need for deterrence so great, that Ms. Davis is entitled to a trebling of the above-stated damages, plus attorneys' fees and costs, as provided by 73 P.S. § 201-9.2(a), and any other relief the Court deems proper.

## COUNT IV: BREACH OF CONTRACT AGAINST STATE FARM

169.    Plaintiff incorporates the previous allegations by reference.

170.    State Farm made a binding offer to insure Ms. Davis's home at a certain level of coverage for $935 per year.  See Ex. A.

Case ID: 210201972

171.    Ms. Davis accepted State Farm's offer and paid the $935 annual premium at closing on March 1, 2019.

172.    By State Farm's actions described above, including but not limited to its collection of additional premium charges for the same policy and its threats to cancel the policy if those amounts were not paid, State Farm breached its obligations under Ms. Davis's insurance policy.

173.    By its actions described above, including but not limited to its failure and refusal to honor the terms of its insurance policy, State Farm breached the implied covenant of good faith and fair dealing implicit in the insurance contract.

174.    As a direct and proximate result of State Farm's breach, Ms. Davis was deprived of coverage that she had already paid for.

175.    As a direct and proximate result of State Farm's breach, Ms. Davis was charged additional premiums that Freedom paid on her behalf and that she was forced to repay to Freedom, and which were only partially refunded to her by State Farm.

176.    As a direct and proximate result of State Farm's breach, Ms. Davis's monthly mortgage amount was increased and she was charged additional fees and costs by her mortgage company, Freedom.

177.    State Farm's conduct in breaching the insurance contract is without excuse or justification.

178.    As a result of State Farm's breach of the insurance contract, Ms. Davis is entitled to a refund of all premiums wrongly charged and held by State Farm, and all reasonably foreseeable damages resulting from State Farm's breach of it.

**COUNT V – VIOLATION OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT ("FCEUA") AND THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL") AGAINST FREEDOM**

179.    Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

180.    Mortgage servicing is a form of "trade" or "commerce" covered by the UTPCPL.

181.    In violation of the UTPCPL, Defendant Freedom engaged in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" by sending Ms. Davis a barrage of inconsistent and confusing collection and delinquency notices claiming different amounts of over due payments, failing to credit her payments properly, and demanding amounts in excess of the correct monthly mortgage payment.

182.    Defendant Freedom also engaged in unfair or deceptive debt collection activity and practices in violation of Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. §§ 2270.1, et seq.

183.    Freedom is a creditor as defined by the FCUEA, 73 P.S. § 2270.3.

184.    Freedom has engaged in unfair or deceptive debt collection activity and practices in violation of the FCEUA, including but not limited to:

    a.    Using false, deceptive, and misleading representations or means in connection with the collection of a debt. 73 P.S. § 2270.4(b)(5); and

    b.    Demanding fees or charges not expressly authorized by the agreement creating the debt or permitted by law. 73 P.S. § 2270.4(b)(6).

185.    Many of the fees and arrears claimed by Freedom as due from Ms. Davis in its mortgage statements, Act 91 Notices and other correspondence were are not authorized by the loan documents.

Case ID: 210201972

186.    Freedom threatened foreclosure when Ms. Davis was not behind on her mortgage, called her many times a day, sent people to her property to harass her, and called her place of employment, all to force her to pay amounts that were not required under the mortgage.

187.    A violation of the FCEUA is a per se violation of the UTPCPL. 73 P.S. §§ 201-1, et seq.

188.    Ms. Davis reasonably relied on Freedom's misrepresentations about the amounts due under her mortgage in making payments that Freedom misapplied to an alleged escrow shortage and failed to credit to her monthly payments.

189.    As a result of Freedom's conduct, Ms. Davis has been damaged and has suffered ascertainable loss of money or property because she has been forced to pay unjustified fees, and the cost of excess insurance premiums that Freedom should not have paid to State Farm.

190.    Under the UTPCPL, the Plaintiff is entitled to treble damages, reasonable attorneys' fees and costs, and any other relief the Court deems proper. 73 P.S. § 201-9.2(a).

**COUNT VI: VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA") AS TO REQUEST FOR INFORMATION AND NOTICE OF ERROR**

191.    Plaintiff incorporates the previous allegations by reference.

192.    Ms. Davis's loan serviced by Freedom ("the Loan") is a federally related mortgage loan within the meaning of RESPA, 12 U.S.C. § 2602(1).

193.    Section 2605 of RESPA imposes certain requirements and obligations on servicers of federally related mortgage loans, and, under Section 2605(f), these requirements are enforceable by borrowers.

194.    Defendant Freedom is the servicer of the Loan within the meaning of Section 2605(i)(2) since it is the entity charged with servicing the loan, including accepting and applying the periodic monthly payments made by Ms. Davis according to the terms of the Loan.

195.    Ms. Davis is a borrower within the meaning of Section 2605.

196.    Under Section 2605(e), a borrower may submit to its servicer a qualified written request ("QWR") either identifying an error in the servicing of the loan ("Notice of Error") or requesting information concerning the servicing of the loan ("Request for Information").  See 12 U.S.C. § 2605(e); 12 C.F.R. §1024.35; 12 C.F.R. § 1024.36.

197.    Within thirty days of the receipt of a Request for Information, the servicer must conduct a reasonable investigation into the Request for Information and either provide the borrower with the requested information or notify the borrower in writing that the requested information is not available, provide a basis for that determination, and include contact information should the borrower require further assistance.  *See* 12 C.F.R. § 1024.36(d).

198.    Within thirty days of the receipt of a Notice of Error under RESPA, the servicer must conduct a reasonable investigation and provide a response.  If the servicer determines that an error occurred, the servicer must correct the error identified by the borrower and provide a written notification of the correction.  If, pursuant to a reasonable investigation, the servicer determines that no error occurred, the servicer must notify the borrower in writing and provide a statement of the reasons for this determination. See 12 C.F.R. § 1024.35(e)(1)(i).

199.    On July 21, 2020, Ms. Davis, acting through her attorney, sent Freedom a Request for Information and Notice of Error ("the RESPA Letter"), requesting a complete account history as well as answers to specific questions.  The RESPA Letter also identified specific errors in servicing that Ms. Davis alleged Freedom to have committed, specifically charging her the $1,288

without justification because it should not have paid another insurance premium shortly after closing at which an entire year of insurance coverage had been paid for; and failing to accept and credit Ms. Davis's payments properly since January 2020. (See Ex. E.)

200.    Freedom failed to acknowledge receipt of the RESPA Letter or to respond to it within the timeframes required under the statute.

201.    As of the filing of this complaint, Freedom has never responded to the RESPA Letter, although it did email some documents to Ms. Davis's counsel after a phone call to follow up on the RESPA Letter.

202.    As a result of Freedom's failures to provide or even search for the requested information, to correct any of its errors or to respond to the RESPA Letter as required by law, Ms. Davis suffered damages including but not limited to emotional distress specifically related to her inability to obtain information and correction of the errors, postage costs, and the time expended on further investigation and litigation.

203.    Upon information and belief, Freedom's noncompliant investigation and insufficient written response to Ms. Davis's RESPA letter was part of an ongoing and deliberate practice of noncompliance by Freedom with the requirements of RESPA.

204.    For Defendant Freedom's violations of RESPA's Request for Information and Notice of Error provisions, Ms. Davis is entitled to actual damages, emotional damages, statutory damages for Freedom's pattern and practice of bad conduct, attorneys' fees and costs, and any other relief the Court deems proper.

## COUNT VII: VIOLATION OF FAIR CREDIT REPORTING ACT ("FCRA") AGAINST FREEDOM

205.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as alleged above.

206.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

207.    At all times pertinent hereto, Defendant Freedom was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

208.    At all times pertinent hereto, Equifax, Experian and Trans Union were each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

209.    Defendant Freedom violated Sections 1681n and 1681o of the FCRA by failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

210.    Freedom's conduct was a direct and proximate cause, as well as a substantial factor, in causing the injuries, damages and harm to Ms. Davis that are outlined more fully above, and as a result Freedom is liable to compensate her for the full amount of statutory, actual and punitive damages, along with attorney's fees and costs, as well as such other relief as permitted by law.

**COUNT VIII – VIOLATION OF § 1639f OF THE TRUTH IN LENDING ACT ("TILA"), AGAINST FINANCE OF AMERICA**

211.    Plaintiff incorporates the previous allegations by reference.

212.    Under the Truth in Lending Act ("TILA"), as holder of Ms. Davis's mortgage, Finance of America is required to credit payments to her account as of the date of receipt, unless any delay in crediting did not result in a charge to her, or negative reporting about her to a consumer reporting agency.  15 U.S.C. § 1639f; 12 C.F.R. § 1026.36(c)(1).

213.    Upon information and belief, Freedom services Ms. Davis's mortgage pursuant to a servicing agreement with Finance of America, and Finance of America is responsible for Freedom's compliance with TILA as its servicing agent.

214.    Freedom has failed to promptly and properly credit Ms. Davis's account with mortgage payments she made within the past twelve months, each in an amount sufficient to cover a periodic payment of principal and interest, in violation of TILA. 15 U.S.C. § 1639f; 12 C.F.R. § 1026.36(c)(1).

215.    Upon information and belief, Freedom's failure to properly credit Plaintiff's monthly payments as of the date each payment was made caused Plaintiff to be assessed unjustified late fees and other fees.

216.    In addition, upon information and belief, Freedom completely failed to credit Ms. Davis's account with one or more monthly payments that she made in 2020.

217.    Plaintiff has been damaged in the amount of any fees she was charged by Freedom as a result of its failure to promptly and properly credit her account, and she has also incurred expenses related to her efforts to correct Freedom's violations of TILA § 1639f.

218.    As a result of Freedom's violations of TILA § 1639f, Plaintiff is entitled to actual damages, statutory damages pursuant to 15 U.S.C. § 1640, attorneys' fees and costs, and any other relief the Court deems proper.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Sadina Davis respectfully requests that judgment be entered in her favor and that the Court award her the following:

(a)    Actual damages;

(b)    Statutory damages as to Counts III, V, VI, VII and VIII;

(c)    Treble damages as to Counts III and V;

(d)    Punitive damages as to Counts I, II, and VII;

(e)    Attorneys' fees and costs; and

(f)    Such other relief as the Court deems just and proper.

Respectfully submitted:


Date: ___2/22/21_____                    ___/s/Rachel Labush_____

                                             RACHEL LABUSH, ESQ.
                                             PA Bar ID No. 200285
                                             Community Legal Services, Inc.
                                             1424 Chestnut St.
                                             Philadelphia, PA  19102
                                             (215) 981-3739
                                             *Attorney for Plaintiff*

## Verification

I, Sadina Davis, Plaintiff in this matter, verify that the facts stated in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements therein are subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to authorities.

Date: _2/20/21_

_____
SADINA DAVIS

Case ID: 210201972

USTED ESTA ORDENADO COMPARECER EN Arbitration Hearing 1880 JFK Blvd. 5th fl. at 09:15 AM - 12/09/2021

You must still comply with the notice below. USTED TODAVIA DEBE CUJPLIR CON EL AVISO PARA DEFENDERSE.

This matter will be heard by a Board of Arbitrators at the time, date and place specified but, if one or more parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial denovo on appeal from a decision entered by a Judge.

Filed and Attested by the
Office of Judicial Records
22 FEB 2021 04:38 pm
G.   IMPERATO

# Exhibit A

Case ID: 210201972

## DECLARATIONS

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

Coverage afforded by this policy is provided by:

State Farm Fire and Casualty Company
100 State Farm Place
Ballston Spa, NY 12020-3722

A Stock Company with Home Offices in Bloomington, Illinois.

| 78-EQ-D552-6 | **Policy Number** |
|---|---|

**Named Insured and Mailing Address**
DAVIS, SADINA
1101 W GIRARD AVE
PHILADELPHIA, PA 19123-1138

The Policy Period begins and ends at 12:01 a.m. Standard Time at the residence premises.

02/28/2019 **Effective Date**
**12 months - Policy Period**
02/28/2020 **Expiration of Policy Period**

**Automatic Renewal** - If the Policy Period is shown as **12 months**, this policy will be renewed automatically subject to the premiums, rules and forms in effect each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

**Limit of Liability - Section 1**
$273,000  Dwelling (Coverage A)
**Policy Type**    Homeowners Policy
A1 - Replacement Cost - Similar Construction
Increased Dwelling Up to $54,600 - Option ID

**Deductibles - Section 1** $1,000
ALL LOSSES In case of loss under this policy, the deductible will be applied per occurrence and will be deducted from the amount of the loss. Other deductibles may apply - refer to your policy.

**Location of Premises**
6234 GARDENIA ST
PHILADELPHIA, PA 19144-1609

**Policy Premium**       $935.00

**Forms, Options, & Endorsements**
Building Ordinance or Law
FP 7955 Homeowners Policy

Home Computer

**Mortgagee & Addl. Interests**
MORTGAGEE
FINANCE OF AMERICA MORTGAGE LLC
ITS SUCCESSOR AND / OR ASSIGNS
PO BOX 480
HORSHAM, PA 19044-0480
Loan Number: 1190008417

**Agent Name & Address**
Thompson, Garland
300 Martin L King Blvd Ste 100
WILMINGTON, DE 19801-2465
(302)407-6262

**PREMIUM NOTICE**
**STATE FARM INSURANCE COMPANIES**
**AGENT ISSUED DECLARATIONS**

| POLICY NUMBER | BILLING PERIOD | | AGENT CODE |
|---|---|---|---|
| 78-EQ-D552-6 | **FROM** 02/28/2019   **TO** 02/28/2020 | | 96B6 |

**LOCATION**
6234 GARDENIA ST
PHILADELPHIA,  PA  19144-1609

**INSURED**
DAVIS, SADINA
1101 W GIRARD AVE
PHILADELPHIA,  PA  19123-1138

| | | |
|---|---|---|
| **PREMIUM** | $ | 935.00 |
| **AMOUNT PAID** | $ | 0.00 |
| **CREDIT AMOUNT** | $ | |
| **AMOUNT DUE** | $ | 935.00 |
| **DATE DUE** | | 03/28/2019 |

**MORTGAGEE & ADDL. INTERESTS**

MORTGAGEE
FINANCE OF AMERICA MORTGAGE LLC
ITS SUCCESSOR AND / OR ASSIGNS
PO BOX 480
HORSHAM,  PA  19044-0480
Loan Number: 1190008417

**AGENT NAME & ADDRESS**

Thompson, Garland
300 Martin L King Blvd Ste 100
WILMINGTON,  DE  19801-2465
(302)407-6262

This is the only notice you will receive. Please make check payable to **STATE FARM** and return it with this notice to the address shown below. Your canceled check is your receipt. Thanks for letting us serve you.

**STATE FARM INSURANCE COMPANIES**
**Lender Service Center - Payments**
**PO Box 588002**
**North Metro, GA  30029-8002**

Case ID: 210201972

# Exhibit B

Case ID: 210201972

**FREEDOM MORTGAGE®**

FOR RETURN SERVICE ONLY
PLEASE DO NOT SEND PAYMENTS TO THIS ADDRESS
P.O. BOX 619063
DALLAS, TX 75261-9063

## Escrow Account Disclosure Statement

### Account Information

| | |
|---|---|
| Loan Number: | ████████ |
| Property Address: | 6234 GARDENIA ST |
| | PHILADELPHIA PA 19144 |

7-807-33555-0009216-001-011-000-000-000

SADINA D DAVIS
6234 GARDENIA ST
PHILADELPHIA PA 19144-1609

| | |
|---|---|
| Statement Date: | 10/30/2019 |
| Current Payment Amount: | $1,053.67 |
| **New Payment Amount:** | **$1,336.43** |
| **New Payment Effective Date:** | **12/01/2019** |

You are receiving this statement because you have an escrow account with us. We have safeguards in place to ensure there is enough money in your account to cover your homeowners insurance, real estate taxes and mortgage insurance, if applicable. However, changes in your taxes and insurance could result in a shortage or surplus in your escrow account

Based on our most recent analysis, you have a shortage of $2,122.91 in your escrow account. This shortage likely was caused by changes in your taxes and/or insurance. A shortage may also result if full monthly escrow payments have not been made to your account. To see these changes, refer to Part 2. You may choose to pay your escrow shortage up front; otherwise, we will spread the shortage amount over future monthly escrow payments.

| | |
|---|---|
| Projected Minimum Balance | ($1,463.49) |
| - Required Minimum Balance | $659.42 |
| Shortage Amount | $2,122.91 |

The required minimum balance is also known as the escrow cushion. The required minimum balance or escrow cushion is the amount that you are required to pay into your escrow account to cover unanticipated disbursements for escrow items or for disbursements that have to be made before the monthly escrow payments are available in your escrow account.

Part 1 provides your current and the new escrow payment amounts. Part 2 shows what has already happened in your account while Part 3 shows what we anticipate happening in your account over the next 12 months. As tax and insurance amounts may be subject to change each year, the amounts in Part 3 are only estimates.

**To correct your shortage, we've outlined two different payment options for you to choose from:**

### PART 1 — Your Mortgage Payment

#### Payment information beginning with your 12/01/2019 payment

**Option 1**

Step 1 - Pay your shortage in full by using the coupon below.

Step 2 - After your shortage of $2,122.91 is applied, your new monthly payment amount will be $1,159.53.

| Payment Information | Current Monthly Payment | New Monthly Payment |
|---|---|---|
| Principal & Interest | $731.49 | $731.49 |
| Escrow Payment | $322.18 | $428.04 |
| Shortage Spread | $0.00 | $0.00 |
| **Total Payment:** | **$1,053.67** | **$1,159.53** |

· · · · · · · · · · · · · · · · · · · · · **OR** · · · · · · · · · · · · · · · · · · · ·

**Option 2**

If you choose not to pay your shortage in full (Option 1), this amount will automatically be spread over 12 months. Your new monthly payment will be $1,336.43.

| Payment Information | Current Monthly Payment | New Monthly Payment |
|---|---|---|
| Principal & Interest | $731.49 | $731.49 |
| Escrow Payment | $322.18 | $428.04 |
| Shortage Spread | $0.00 | $176.90 |
| **Total Payment:** | **$1,053.67** | **$1,336.43** |

**NOTICE:** Freedom Mortgage Corporation is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, in the event the debt has been discharged pursuant to or the addressee or recipient is under the protection of federal bankruptcy law, this communication is solely for informational purposes and is not an attempt to collect a debt.

## ESCROW SHORTAGE COUPON

**PART 2**

## Your Escrow Account History

The chart below reflects what actually happened in your escrow account since the last analysis. This compares what we expected to occur with what actually happened.

| Date | What We Estimated to Pay In | Payment to Escrow | What We Estimated to Pay Out | What We Paid Out | Description | Last Year's Estimated Balance | Actual Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance | **$895.35** | **$895.35** |
| Apr 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $1,119.20 | $1,119.20 |
| May 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $1,343.05 | $1,343.05 |
| Jun 2019 | $322.18 | $0.00 | $98.33 | $0.00 | FHA MORTGAGE INSURANCE | $1,566.90 | $1,343.05 |
| Jul 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $1,790.75 | $1,566.90 |
| Aug 2019 | $322.18 | $322.18 | $98.33 | $1,288.00 * | HOMEOWNERS | $2,014.60 | $601.08 |
| Aug 2019 | $0.00 | $0.00 | $0.00 | $98.33 | FHA MORTGAGE INSURANCE | $2,014.60 | $502.75 |
| Sep 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $2,238.45 | $726.60 |
| Oct 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $2,462.30 | $950.45 |
| Nov 2019 | $322.18 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $2,686.15 | $950.45 |
| Dec 2019 | $322.18 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $2,910.00 | $950.45 |
| Jan 2020 | $322.18 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $3,133.85 | $950.45 |
| Feb 2020 | $322.18 | $0.00 | $935.00 | $0.00 | E HOMEOWNERS INSURANCE | $2,521.03 | $950.45 |
| Feb 2020 | $0.00 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $2,422.70 | $950.45 |
| Feb 2020 | $0.00 | $0.00 | $1,751.15 | $0.00 | E CITY TAX | $671.55 | $950.45 |
| Mar 2020 | $322.18 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $895.40 | $950.45 |
| **Total** | **$3,866.16** | **$1,933.08** | **$3,866.11** | **$1,877.98** | | | |

An asterisk (*) indicates a difference in that month between the actual activity and the estimated activity.

When applicable, the letter "E" beside an amount indicates that a payment or disbursement has not yet occurred but is estimated to occur as shown.

LOAN NUMBER: ▇▇▇▇▇▇

**FREEDOM MORTGAGE®**

FOR RETURN SERVICE ONLY
PLEASE DO NOT SEND PAYMENTS TO THIS ADDRESS
P.O. BOX 619063
DALLAS, TX 75261-9063

**Escrow Account Disclosure Statement**

| Account Information | Page 2 |
|---|---|

| | |
|---|---|
| Loan Number: | |
| Property Address: | 6234 GARDENIA ST |
| | PHILADELPHIA PA 19144 |

7-807-33555-0009216-001-011-000-000-000

SADINA D DAVIS
6234 GARDENIA ST
PHILADELPHIA PA 19144-1609

| | |
|---|---|
| Statement Date: | **10/30/2019** |
| Current Payment Amount: | **$1,053.67** |
| **New Payment Amount:** | **$1,336.43** |
| **New Payment Effective Date:** | **12/01/2019** |

**PART 3**

## Expected Escrow Payments over the next 12 Months

| | | |
|---|---|---|
| HOMEOWNERS | $2,223.00 | |
| FHA MORTGAGE INSURANCE | $1,179.96 | |
| CITY TAX | $1,733.63 | |
| **Total Disbursements** | **$5,136.59** | |

Freedom expects to pay $5,136.59 over the next 12 months. Here's how to calculate your new monthly escrow payment:

| | |
|---|---|
| Total Disbursements: | $5,136.59 |
| ÷ 12 Months: | 12 |
| **New Monthly Escrow Payment** | **$428.04** |

### Summary of Your Projected Escrow Account for the Coming Year

| Date | Payment to Escrow | What We Expect to Pay Out | Description | Your Actual Balance | Balance Needed In Your Account |
|---|---|---|---|---|---|
| | | | Beginning Balance | $1,174.30 | $3,297.21 |
| Dec 2019 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | $1,504.01 | $3,626.92 |
| Jan 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | $1,833.72 | $3,956.63 |
| Feb 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | $2,163.43 | $4,286.34 |
| Feb 2020 | $0.00 | $1,733.63 | CITY TAX | $429.80 | $2,552.71 |
| Mar 2020 | $428.04 | $2,223.00 | HOMEOWNERS | ($1,365.16) | $757.75 |
| Mar 2020 | $0.00 | $98.33 | FHA MORTGAGE INSURANCE | ($1,463.49) | $659.42 * |
| Apr 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | ($1,133.78) | $989.13 |
| May 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | ($804.07) | $1,318.84 |
| Jun 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | ($474.36) | $1,648.55 |
| Jul 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | ($144.65) | $1,978.26 |
| Aug 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | $185.06 | $2,307.97 |
| Sep 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | $514.77 | $2,637.68 |
| Oct 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | $844.48 | $2,967.39 |
| Nov 2020 | $428.04 | $98.33 | FHA MORTGAGE INSURANCE | $1,174.19 | $3,297.10 |
| | $5,136.48 | $5,136.59 | | | |

The required minimum balance, as indicated by the asterisk (*) in the summary above, is determined by the Real Estate Settlement Procedures Act (RESPA), your mortgage contract or state law. Your minimum balance may include up to two months of escrow payments (excluding PMI/MIP) to cover increases to your taxes and homeowners insurance.

**PART 4**

## What This Means to You

Your escrow balance is less than the required minimum balance or cushion in your account. The resulting shortage is $2,122.91.

Please refer to Part 1 for your repayment options. For your convenience, your shortage has been spread over 12

# Exhibit C

Case ID: 210201972

REPRESENTATION OF PRINTED DOCUMENT

**FREEDOM MORTGAGE®**

FOR RETURN SERVICE ONLY
PLEASE DO NOT SEND PAYMENTS TO THIS ADDRESS
P.O. BOX 619063
DALLAS, TX 75261-9063

### Escrow Account Disclosure Statement

| Account Information | |
|---|---|
| Loan Number: | ■■■■■■ |
| Property Address: | 6234 GARDENIA ST |
| | PHILADELPHIA PA 19144 |

0-807-34816-0007089-001-011-000-000-000

SADINA D DAVIS
6234 GARDENIA ST
PHILADELPHIA PA 19144-1609

| | |
|---|---|
| Statement Date: | **12/06/2019** |
| Current Payment Amount: | **$1,053.67** |
| **New Payment Amount:** | **$1,277.82** |
| **New Payment Effective Date:** | **12/01/2019** |

You are receiving this statement because you have an escrow account with us. We have safeguards in place to ensure there is enough money in your account to cover your homeowners insurance, real estate taxes and mortgage insurance, if applicable. However, changes in your taxes and insurance could result in a shortage or surplus in your escrow account

Based on our most recent analysis, you have a shortage of $2,009.86 in your escrow account. This shortage likely was caused by changes in your taxes and/or insurance. A shortage may also result if full monthly escrow payments have not been made to your account. To see these changes, refer to Part 2. You may choose to pay your escrow shortage up front; otherwise, we will spread the shortage amount over future monthly escrow payments.

| | |
|---|---|
| Projected Minimum Balance | ($1,448.82) |
| - Required Minimum Balance | $561.04 |
| Shortage Amount | $2,009.86 |

The required minimum balance is also known as the escrow cushion. The required minimum balance or escrow cushion is the amount that you are required to pay into your escrow account to cover unanticipated disbursements for escrow items or for disbursements that have to be made before the monthly escrow payments are available in your escrow account.

Part 1 provides your current and the new escrow payment amounts. Part 2 shows what has already happened in your account while Part 3 shows what we anticipate happening in your account over the next 12 months. As tax and insurance amounts may be subject to change each year, the amounts in Part 3 are only estimates.

**To correct your shortage, we've outlined two different payment options for you to choose from:**

**PART 1**

### Your Mortgage Payment

#### Payment information beginning with your 12/01/2019 payment

**Option 1**

Step 1 - Pay your shortage in full by using the coupon below.

Step 2 - After your shortage of $2,009.86 is applied, your new monthly payment amount will be $1,110.34.

| Payment Information | Current Monthly Payment | New Monthly Payment |
|---|---|---|
| Principal & Interest | $731.49 | $731.49 |
| Escrow Payment | $322.18 | $378.85 |
| Shortage Spread: | $0.00 | $0.00 |
| **Total Payment:** | **$1,053.67** | **$1,110.34** |

• • • • • • • • • • • • • • • • • • • • • • • **OR** • • • • • • • • • • • • • • • • • • • • • • •

**Option 2**

If you choose not to pay your shortage in full (Option 1), this amount will automatically be spread over 12 months. Your new monthly payment will be $1,277.82.

| Payment Information | Current Monthly Payment | New Monthly Payment |
|---|---|---|
| Principal & Interest | $731.49 | $731.49 |
| Escrow Payment | $322.18 | $378.85 |
| Shortage Spread: | $0.00 | $167.48 |
| **Total Payment:** | **$1,053.67** | **$1,277.82** |

**NOTICE:** Freedom Mortgage Corporation is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, in the event the debt has been discharged pursuant to or the addressee or recipient is under the protection of federal bankruptcy law, this communication is solely for informational purposes and is not an attempt to collect a debt.

### ESCROW SHORTAGE COUPON

**PART 2**

## Your Escrow Account History

The chart below reflects what actually happened in your escrow account since the last analysis. This compares what we expected to occur with what actually happened.

| Date | What We Estimated to Pay In | Payment to Escrow | What We Estimated to Pay Out | What We Paid Out | Description | Last Year's Estimated Balance | Actual Balance |
|------|------|------|------|------|------|------|------|
| | | | | | Beginning Balance | **$895.35** | **$895.35** |
| Apr 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $1,119.20 | $1,119.20 |
| May 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $1,343.05 | $1,343.05 |
| Jun 2019 | $322.18 | $0.00 | $98.33 | $0.00 | FHA MORTGAGE INSURANCE | $1,566.90 | $1,343.05 |
| Jul 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $1,790.75 | $1,566.90 |
| Aug 2019 | $322.18 | $322.18 | $98.33 | $1,288.00 * | HOMEOWNERS | $2,014.60 | $601.08 |
| Aug 2019 | $0.00 | $0.00 | $0.00 | $98.33 | FHA MORTGAGE INSURANCE | $2,014.60 | $502.75 |
| Sep 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $2,238.45 | $726.60 |
| Oct 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $2,462.30 | $950.45 |
| Nov 2019 | $322.18 | $420.51 | $98.33 | $98.33 * | FHA MORTGAGE INSURANCE | $2,686.15 | $1,272.63 |
| Nov 2019 | $0.00 | $0.00 | $0.00 | $1,632.72 | HOMEOWNERS | $2,686.15 | ($360.09) |
| Dec 2019 | $322.18 | $0.00 | $98.33 | $98.33 * | E FHA MORTGAGE INSURANCE | $2,910.00 | ($458.42) |
| Dec 2019 | $0.00 | $0.00 | $0.00 | $98.33 | E FHA MORTGAGE INSURANCE | $2,910.00 | ($556.75) |
| Jan 2020 | $322.18 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $3,133.85 | ($556.75) |
| Feb 2020 | $322.18 | $0.00 | $935.00 | $0.00 | E HOMEOWNERS INSURANCE | $2,521.03 | ($556.75) |
| Feb 2020 | $0.00 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $2,422.70 | ($556.75) |
| Feb 2020 | $0.00 | $0.00 | $1,751.15 | $0.00 | E CITY TAX | $671.55 | ($556.75) |
| Mar 2020 | $322.18 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $895.40 | ($556.75) |
| **Total** | **$3,866.16** | **$2,353.59** | **$3,866.11** | **$3,805.69** | | | |

An asterisk (*) indicates a difference in that month between the actual activity and the estimated activity.

When applicable, the letter "E" beside an amount indicates that a payment or disbursement has not yet occurred but is estimated to occur as shown.

LOAN NUMBER: ▓▓▓▓▓▓

**FREEDOM MORTGAGE®**

FOR RETURN SERVICE ONLY
PLEASE DO NOT SEND PAYMENTS TO THIS ADDRESS
P.O. BOX 619063
DALLAS, TX 75261-9063

**Escrow Account Disclosure Statement**

| Account Information | Page 2 |
|---|---|

| | |
|---|---|
| Loan Number: | ███████ |
| Property Address: | 6234 GARDENIA ST |
| | PHILADELPHIA PA 19144 |

| | |
|---|---|
| Statement Date: | **12/06/2019** |
| Current Payment Amount: | **$1,053.67** |
| **New Payment Amount:** | **$1,277.82** |
| **New Payment Effective Date:** | **12/01/2019** |

0-807-34816-0007089-001-011-000-000-000

SADINA D DAVIS
6234 GARDENIA ST
PHILADELPHIA PA 19144-1609

---

**PART 3**

## Expected Escrow Payments over the next 12 Months

| | |
|---|---|
| HOMEOWNERS | $1,632.72 |
| FHA MORTGAGE INSURANCE | $1,179.96 |
| CITY TAX | $1,733.63 |
| **Total Disbursements** | **$4,546.31** |

Freedom expects to pay $4,546.31 over the next 12 months. Here's how to calculate your new monthly escrow payment:

| | |
|---|---|
| Total Disbursements: | $4,546.31 |
| ÷ 12 Months: | 12 |
| **New Monthly Escrow Payment** | **$378.85** |

### Summary of Your Projected Escrow Account for the Coming Year

| Date | Payment to Escrow | What We Expect to Pay Out | Description | Your Actual Balance | Balance Needed In Your Account |
|---|---|---|---|---|---|
| | | | Beginning Balance | ($556.75) | $1,453.11 |
| Dec 2019 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | ($276.23) | $1,733.63 |
| Jan 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | $4.29 | $2,014.15 |
| Feb 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | $284.81 | $2,294.67 |
| Feb 2020 | $0.00 | $1,733.63 | CITY TAX | ($1,448.82) | $561.04 * |
| Mar 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | ($1,168.30) | $841.56 |
| Apr 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | ($887.78) | $1,122.08 |
| May 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | ($607.26) | $1,402.60 |
| Jun 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | ($326.74) | $1,683.12 |
| Jul 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | ($46.22) | $1,963.64 |
| Aug 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | $234.30 | $2,244.16 |
| Sep 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | $514.82 | $2,524.68 |
| Oct 2020 | $378.85 | $98.33 | FHA MORTGAGE INSURANCE | $795.34 | $2,805.20 |
| Nov 2020 | $378.85 | $1,632.72 | HOMEOWNERS | ($458.53) | $1,551.33 |
| Nov 2020 | $0.00 | $98.33 | FHA MORTGAGE INSURANCE | ($556.86) | $1,453.00 |
| | $4,546.20 | $4,546.31 | | | |

The required minimum balance, as indicated by the asterisk (*) in the summary above, is determined by the Real Estate Settlement Procedures Act (RESPA), your mortgage contract or state law. Your minimum balance may include up to two months of escrow payments (excluding PMI/MIP) to cover increases to your taxes and homeowners insurance.

---

**PART 4**

## What This Means to You

Your escrow balance is less than the required minimum balance or cushion in your account. The resulting shortage is $2,009.86.

Please refer to Part 1 for your repayment options. For your convenience, your shortage has been spread over 12

# Exhibit D

Case ID: 210201972

REPRESENTATION OF PRINTED DOCUMENT

**FREEDOM MORTGAGE**

FOR RETURN SERVICE ONLY
PLEASE DO NOT SEND PAYMENTS TO THIS ADDRESS
P.O. BOX 619063
DALLAS, TX 75261-9063

**Escrow Account Disclosure Statement**

## Account Information

0-807-35822-0004286-001-010-000-000-000

SADINA D DAVIS
6234 GARDENIA ST
PHILADELPHIA PA 19144-1609

| | |
|---|---|
| Loan Number: | ▮▮▮▮▮▮▮ |
| Property Address: | 6234 GARDENIA ST |
| | PHILADELPHIA PA 19144 |
| Statement Date: | **01/07/2020** |
| Current Payment Amount: | **$1,053.67** |
| **New Payment Amount:** | **$1,196.59** |
| **New Payment Effective Date:** | **12/01/2019** |

You are receiving this statement because you have an escrow account with us. We have safeguards in place to ensure there is enough money in your account to cover your homeowners insurance, real estate taxes and mortgage insurance, if applicable. However, changes in your taxes and insurance could result in a shortage or surplus in your escrow account

Based on our most recent analysis, you have a shortage of $1,904.64 in your escrow account. This shortage likely  was caused by changes in your taxes and/or insurance. A shortage may also result if full monthly escrow payments have not been made to your account. To see these changes, refer to Part 2. You may choose to pay your escrow shortage up front; otherwise, we will spread the shortage amount over future monthly escrow payments.

| | |
|---|---|
| Projected Minimum Balance | ($1,329.82) |
| - Required Minimum Balance | $574.82 |
| Shortage Amount | $1,904.64 |

The required minimum balance is also known as the escrow cushion.  The required minimum balance or escrow cushion is the amount that you are required to pay into your escrow account to cover unanticipated disbursements for escrow items or for disbursements that have to be made before the monthly escrow payments are available in your escrow account.

Part 1 provides your current and the new escrow payment amounts. Part 2 shows what has already happened in your account while Part 3 shows what we anticipate happening in your account over the next 12 months.  As tax and insurance amounts may be subject to change each year, the amounts in Part 3 are only estimates.

**To correct your shortage, we've outlined two different payment options for you to choose from:**

## PART 1 — Your Mortgage Payment

### Payment information beginning with your 12/01/2019 payment

**Option 1**

Step 1 - Pay your shortage in full by using the coupon below.

Step 2 - After your shortage of $1,904.64 is applied, your new monthly payment amount will be $1,117.23.

| Payment Information | Current Monthly Payment | New Monthly Payment |
|---|---|---|
| Principal & Interest | $731.49 | $731.49 |
| Escrow Payment | $322.18 | $385.74 |
| Shortage Spread | $0.00 | $0.00 |
| **Total Payment:** | **$1,053.67** | **$1,117.23** |

· · · · · · · · · · · · · · · · · · · · · · · · **OR** · · · · · · · · · · · · · · · · · · · · · · ·

**Option 2**

If you choose not to pay your shortage in full (Option 1), this amount will automatically be spread over 24 months. Your new monthly payment will be $1,196.59.

| Payment Information | Current Monthly Payment | New Monthly Payment |
|---|---|---|
| Principal & Interest | $731.49 | $731.49 |
| Escrow Payment | $322.18 | $385.74 |
| Shortage Spread | $0.00 | $79.36 |
| **Total Payment:** | **$1,053.67** | **$1,196.59** |

**NOTICE:** Freedom Mortgage Corporation is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, in the event the debt has been discharged pursuant to or the addressee or recipient is under the protection of federal bankruptcy law, this communication is solely for informational purposes and is not an attempt to collect a debt.

## ESCROW SHORTAGE COUPON

**PART 2**

**Your Escrow Account History**

The chart below reflects what actually happened in your escrow account since the last analysis. This compares what we expected to occur with what actually happened.

| Date | What We Estimated to Pay In | Payment to Escrow | What We Estimated to Pay Out | What We Paid Out | Description | Last Year's Estimated Balance | Actual Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance | **$895.35** | **$895.35** |
| Apr 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $1,119.20 | $1,119.20 |
| May 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $1,343.05 | $1,343.05 |
| Jun 2019 | $322.18 | $0.00 | $98.33 | $0.00 | FHA MORTGAGE INSURANCE | $1,566.90 | $1,343.05 |
| Jul 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $1,790.75 | $1,566.90 |
| Aug 2019 | $322.18 | $322.18 | $98.33 | $1,288.00 * | HOMEOWNERS | $2,014.60 | $601.08 |
| Aug 2019 | $0.00 | $0.00 | $0.00 | $98.33 | FHA MORTGAGE INSURANCE | $2,014.60 | $502.75 |
| Sep 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $2,238.45 | $726.60 |
| Oct 2019 | $322.18 | $322.18 | $98.33 | $98.33 | FHA MORTGAGE INSURANCE | $2,462.30 | $950.45 |
| Nov 2019 | $322.18 | $420.51 | $98.33 | $98.33 * | FHA MORTGAGE INSURANCE | $2,686.15 | $1,272.63 |
| Nov 2019 | $0.00 | $0.00 | $0.00 | $1,632.72 | HOMEOWNERS | $2,686.15 | ($360.09) |
| Dec 2019 | $322.18 | $0.00 | $98.33 | $98.33 * | FHA MORTGAGE INSURANCE | $2,910.00 | ($458.42) |
| Dec 2019 | $0.00 | $0.00 | $0.00 | $98.33 | FHA MORTGAGE INSURANCE | $2,910.00 | ($556.75) |
| Jan 2020 | $322.18 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $3,133.85 | ($556.75) |
| Feb 2020 | $322.18 | $0.00 | $935.00 | $0.00 | E HOMEOWNERS INSURANCE | $2,521.03 | ($556.75) |
| Feb 2020 | $0.00 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $2,422.70 | ($556.75) |
| Feb 2020 | $0.00 | $0.00 | $1,751.15 | $0.00 | E CITY TAX | $671.55 | ($556.75) |
| Mar 2020 | $322.18 | $0.00 | $98.33 | $0.00 | E FHA MORTGAGE INSURANCE | $895.40 | ($556.75) |
| **Total** | **$3,866.16** | **$2,353.59** | **$3,866.11** | **$3,805.69** | | | |

An asterisk (*) indicates a difference in that month between the actual activity and the estimated activity.

When applicable, the letter "E" beside an amount indicates that a payment or disbursement has not yet occurred but is estimated to occur as shown.

LOAN NUMBER: ▮▮▮▮▮

REPRESENTATION OF PRINTED DOCUMENT

**FREEDOM MORTGAGE®**

FOR RETURN SERVICE ONLY
PLEASE DO NOT SEND PAYMENTS TO THIS ADDRESS
P.O. BOX 619063
DALLAS, TX 75261-9063

**Escrow Account Disclosure Statement**

| Account Information | Page 2 |
|---|---|

| | |
|---|---|
| Loan Number: | |
| Property Address: | 6234 GARDENIA ST |
| | PHILADELPHIA PA 19144 |

0-807-35822-0004286-001-010-000-000-000

SADINA D DAVIS
6234 GARDENIA ST
PHILADELPHIA PA 19144-1609

| | |
|---|---|
| Statement Date: | **01/07/2020** |
| Current Payment Amount: | **$1,053.67** |
| **New Payment Amount:** | **$1,196.59** |
| **New Payment Effective Date:** | **12/01/2019** |

---

**PART 3**

## Expected Escrow Payments over the next 12 Months

| | |
|---|---|
| HOMEOWNERS | $1,715.33 |
| FHA MORTGAGE INSURANCE | $1,179.96 |
| CITY TAX | $1,733.63 |
| **Total Disbursements** | **$4,628.92** |

Freedom expects to pay $4,628.92 over the next 12 months.

Here's how to calculate your new monthly escrow payment:

| | |
|---|---|
| Total Disbursements: | $4,628.92 |
| ÷ 12 Months: | 12 |
| **New Monthly Escrow Payment** | **$385.74** |

### Summary of Your Projected Escrow Account for the Coming Year

| Date | Payment to Escrow | What We Expect to Pay Out | Description | Your Actual Balance | Balance Needed In Your Account |
|---|---|---|---|---|---|
| | | | Beginning Balance | ($458.42) | $1,446.22 |
| Dec 2019 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | ($171.01) | $1,733.63 |
| Jan 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | $116.40 | $2,021.04 |
| Feb 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | $403.81 | $2,308.45 |
| Feb 2020 | $0.00 | $1,733.63 | CITY TAX | ($1,329.82) | $574.82 * |
| Mar 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | ($1,042.41) | $862.23 |
| Apr 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | ($755.00) | $1,149.64 |
| May 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | ($467.59) | $1,437.05 |
| Jun 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | ($180.18) | $1,724.46 |
| Jul 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | $107.23 | $2,011.87 |
| Aug 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | $394.64 | $2,299.28 |
| Sep 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | $682.05 | $2,586.69 |
| Oct 2020 | $385.74 | $98.33 | FHA MORTGAGE INSURANCE | $969.46 | $2,874.10 |
| Nov 2020 | $385.74 | $1,715.33 | HOMEOWNERS | ($360.13) | $1,544.51 |
| Nov 2020 | $0.00 | $98.33 | FHA MORTGAGE INSURANCE | ($458.46) | $1,446.18 |
| | $4,628.88 | $4,628.92 | | | |

The required minimum balance, as indicated by the asterisk (*) in the summary above, is determined by the Real Estate Settlement Procedures Act (RESPA), your mortgage contract or state law. Your minimum balance may include up to two months of escrow payments (excluding PMI/MIP) to cover increases to your taxes and homeowners insurance.

---

**PART 4**

## What This Means to You

Your escrow balance is less than the required minimum balance or cushion in your account. The resulting shortage is $1,904.64.

Please refer to Part 1 for your repayment options. For your convenience, your shortage has been spread over 24

# Exhibit E

Case ID: 210201972



7/21/2020

Freedom Mortgage
P.O. Box 50428
Indianapolis, IN 46250-0401
*Via Certified Mail*

        Re:    Request for Information and Notice of Error
               Sadina Davis, 6234 Gardenia St., Philadelphia, PA 19144
               Loan Account ███████

To Whom It May Concern:

I am writing on behalf of our client Sadina Davis ("Ms. Davis"). Freedom Mortgage ("you") is the servicer of the mortgage loan at the above address.  You should have a third party release to Community Legal Services on file for this account. We dispute the amount that you claim is owed according to the Monthly Billing Statement and request that you send us information and/or documents regarding the fees, costs, and escrow accounting on our loan.  This is a Request for Information pursuant to 12 C.F.R. §1024.36 and a Notice of Error pursuant to 12 C.F.R. §1024.35.

## **Request for Information**

Specifically, we request the following information:

1. A complete payment history which lists the dates and amounts of all the payments Ms. Davis has made on the loan to date, and shows how each payment was applied or credited (whether to principal, interest, escrow, suspense, or some other treatment).

2. A copy of all monthly statements sent to Ms. Davis since servicing of this mortgage began.

3. A breakdown of the amount of claimed arrears or delinquencies on Ms. Davis's account, including an itemization of all fees and charges you claim are currently due.

4. A breakdown of all changes or adjustments in homeowners insurance for the life of the mortgage including copies of any and all documentation of initiation, cancellation, adjustment or resumption of any and all policies applying to this account.

5. A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last 24 months.

Case ID: 210201972

6.  A copy of any escrow statements, analyses, and notices of a shortage, deficiency, or surplus, sent to Ms. Davis. Please include a copy of any escrow account history for Ms. Davis's loan, if separate escrow account records are maintained by Freedom.

### Notice of Error

In addition to providing the information requested above, please correct the following servicing errors discovered in Ms. Davis's mortgage account, as required under the Error Resolution Procedures described in 12 C.F.R. §1024.35.

1.  You imposed a fee or charge that you lack a reasonable basis to impose upon Ms. Davis in violation of 12 C.F.R. §1024.35(b)(5).

    Ms. Davis' home was originally insured by State Farm under account 78EQD5526. Her homeowner's insurance premium of $935 for the first year was paid at the closing of the mortgage loan. According to the attached response to an inquiry by the Pennsylvania Department of Banking and Securities, State Farm later contacted you indicating that the same account had a total premium of $1,451.00. According to your aforementioned response, State Farm explained the adjustment to you as a de-bundling of homeowner's insurance from auto insurance. Ms. Davis does not own a motor vehicle and has not owned a vehicle which would require auto insurance for several years prior to this closing.

    Under financial services law, if State Farm erroneously believed that Ms. Davis had a vehicle insured by them, and relied on that information to advertise an unprofitable insurance rate to Ms. Davis, they are nonetheless required to honor that rate for the term which has been paid. Additionally, their submission of a mid-year bill for insurance premiums on an account which had just been established with a first year premium payment at closing is highly irregular. Despite State Farm's lack of a legally sufficient justification for this mid-term rate adjustment and the significant irregularity of this bill, you did not audit or contest the charge in any way. Instead, you paid $1,288.00 to State Farm on August 5, 2019. You then assigned that erroneous payment as a balance due on Ms. Davis' escrow charges, despite having no authorization to do so under the law or the mortgage contract.

    Please credit and remove the erroneous $1,288.00 escrow charge from Ms. Davis' account. Please remove all charges, including late charges and property preservation fees, associated with or arising out of your erroneous assignment of this charge. Please correct your account records to show that Ms. Davis's account is current and correct any erroneous reporting of Ms. Davis's account status to the credit bureaus.

2.  You failed to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law as required by 12 C.F.R. §1024.35(b)(2).

Case ID: 210201972

Ms. Davis made her agreed upon monthly mortgage payments of $1,053.67 before the 15th of the month each month until November of 2019. As a result of the erroneously charged escrow balance discussed above, Ms. Davis' account was listed by your company as having past due balances owed. Davis reasonably withheld payment during the month of December 2019 while making active efforts to negotiate appropriate, direct application of future payments to monthly responsibilities, ultimately paying the December 2019 payment on January 22, 2020 at an amount of $1,196.59.

Ms. Davis next contacted you on 2/15/2020 to pay the January and February payments in a single lump sum of $2,106.34 . During this phone conversation, the customer service supervisor indicated that you would accept this payment for both months. However, you instead credited only the January payment as paid and indicated to Ms. Davis during your next contact with her that she still owed $1,000 toward her February payment. This misapplication of funds caused Ms. Davis to place a stop payment on the January and February payments. She then submitted payment in full for these months by certified mail, packaged with a letter documenting your handling of the account to that point and the March payment on March 6th, 2020.

Because the underlying past due balances were themselves improper, as outlined in the previous section, these applications of funds to those past due balances was a misapplication of funds which should have gone to the current monthly payments. Please credit and remove all charges, including late charges and property preservation fees, associated with or arising out of these misapplications of payments. Please update Ms. Davis' account to reflect that all payments prior to and including November 2019 were made on or before the 15th of the month, and that the December 2019 payment was made in full following withholding during contest of an improperly assigned charge. Please correct your account records to show that Ms. Davis's account is current and correct any erroneous reporting of Ms. Davis's account status to the credit bureaus.

For each of the above, if you determine that no error occurred, please provide us with copies of the documents and information that you relied upon to reach such determination, as required by 12 C.F.R. §1024.35(e)(4).

If you have any questions, please feel free to contact me at 215-981-3739 or by email to rlabush@clsphila.org.

Sincerely yours,

*Rachel Labush*

Rachel Labush

Encl.

Cc:    Sadina Davis

Community Legal Services, Inc. · 1424 Chestnut Street · Philadelphia, PA  19102
Community Legal Services, Inc. · 1410 West Erie Avenue · Philadelphia, PA  19140

Case ID: 210201972